[No. 29500. *En Banc.* July 18, 1945.]

BAY CONSTRUCTION, INC., *Respondent,* v. H. R. OLSEN *et al.,*
*Appellants.*[1]

*Henderson, Carnahan & Thompson,* for appellants.

*DuPuis & Ferguson,* for respondent.

BLAKE, J.—This is an appeal from a judgment entered upon the verdict of a jury, in favor of plaintiff, in an action for loss of profits flowing from a breach by defendants of an oral contract.

Defendant Olsen is a building contractor. Prior to September 14, 1943, he had entered into a contract with the Federal housing authority for the construction of a housing project known as the Duwamish building project. The land upon which the buildings were to be erected was below grade, and the contract called for earth filling to bring it up to a designated level.

On September 14th, Olsen entered into a contract with plaintiff to make the fill and rough grade it for seventy cents a yard. Plaintiff was ready to start operations on September 16th. Owing to certain difficulties he had encountered in connection with contract with the Federal housing au-

[1]Reported in 161 P. (2d). 177.

thority, Olsen did not want plaintiff to start work at that time.

Plaintiff, however, began to haul sand for the fill on September 21st. It had some dozen dump trucks on the job. At about nine o'clock that morning, *after the trucks had delivered at least one load each,* defendant Olsen ordered plaintiff to discontinue operations; subsequently, however, he permitted plaintiff to continue throughout the day. Something over a thousand yards of fill material were delivered. (There is no controversy on appeal over the right of plaintiff to recover for the amount of material so delivered at the agreed price of seventy cents a yard.) Plaintiff, however, was not permitted to go further in carrying out its contract.

Plaintiff brought this action for loss of profits. The defendants interposed the defense of the statute of frauds—Rem. Rev. Stat., § 5836-4 [P. P. C. § 854-7], which provides:

"(1)  A contract to sell or a sale of any goods or choses in action exceeding the value of $50 shall not be enforceable by action unless the buyer shall accept part of the goods or choses in action so contracted to be sold or sold, and actually receive the same, or give something in earnest to bind the contract, or in part payment, or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf.  .  .  .

"(3) There is an acceptance of goods within the meaning of this section when the buyer, either before or after delivery of the goods, expresses by words or conduct his assent to becoming the owner of those specific goods."

At appropriate times during the trial and by motion for judgment *non obstante,* defendants challenged the sufficiency of the evidence to take the case to the jury, contending that the contract was for the sale of goods in contemplation of the statute,

"that no part thereof was accepted by the defendants or received by them, and that nothing was given in earnest to bind the contract and in part payment thereof, and that no note or memorandum in writing of the contract was made or signed by these defendants."

(It is conceded that no earnest was given, and that no memorandum in writing was signed.)

The motions were denied, and, as before stated, judgment was entered on the verdict in favor of plaintiff.

The only question presented on appeal is whether the evidence was sufficient to take the case to the jury in the light of the provisions of the statute of frauds, Rem. Rev. Stat., § 5836-4, subd. (3).

Respondent contends that the contract was for work, labor, and materials, and, consequently, does not fall within the ban of the statute. In the view we take of the evidence, it is unnecessary to discuss or pass upon this contention. For, conceding the contract was for the sale of "goods" in contemplation of the statute, we think the evidence was sufficient to take the case to the jury on the issue as to whether there was a delivery by respondent, and an accep-, tance by appellants, of a part of the "goods" pursuant to the oral contract. In arriving at this conclusion, we, of course, appraise the evidence under the rule that it must be viewed in the light most favorable to respondent.

Appellants' evidence was to the effect that, on September 17th, they let a contract for the filling to Thorburn and Logozo, and that they caused respondent to be informed of that fact on September 18th. This is denied by the witnesses for respondent. In any event, appellant Olsen met with three representatives of the respondent at the project on the afternoon of September 20th, and, according to their testimony, he told them to "go ahead, start in the morning"; indeed, appellant Olsen himself testified:

"Q. Later in the afternoon you told the Wasson boys to go ahead in the morning? A. Yes. Q. And they did go ahead? A. Yes, sir. Q. And you knew they were going to go ahead with the work? A. Yes, that is right. Q. And they did it with your consent and knowledge and agreement? A. Yes, sir. Q. Your permission? A. Yes, sir. Q. Pursuant to your agreement with them? A. Yes. I wanted to tell them that they were supposed to see Logozo about the place of the dump, and also the dump man. Q. Well, the Wasson boys were doing business with you? A. Yes, sir. Q. Not with Logozo? A. Yes, sir, but I asked

the Wasson boys to do it. . . . Q. Well, you told the Wasson boys what areas you wanted filled with dirt so you could start the work? A. That is right."

█ The issue, under the evidence, is resolved to this: When was the oral contract repudiated by appellants? According to their theory, it was repudiated on September 18th, *before* any material had been delivered and accepted. According to the evidence most favorable to respondent, it was not repudiated before nine o'clock on September 21st, *after* a substantial amount of material had been delivered pursuant to the order given by Olsen on the afternoon of September 20th.

Under the authorities, the evidence was clearly sufficient to warrant the jury in finding that appellants accepted delivery of a part of the "goods" pursuant to the terms of the contract, thus bringing it within the exception of § 5836-4, subd. (3). *Adams County Mercantile Co. v. Walla Walla Livestock Co.,* 64 Wash. 285, 116 Pac. 669; *Hosner v. McDonnell,* 114 Wash. 489, 195 Pac. 231; *Hance v. Frame,* 141 Wash. 50, 250 Pac. 456.

Judgment affirmed.

BEALS, C. J., and MILLARD, J., concur.

STEINERT, J. (concurring in the result)—I concur in the result upon the theory that the contract was not for the sale of goods or choses in action, but, rather, was for work, labor, and material, and, hence, was not controlled by Rem. Rev. Stat., § 5836-4, subd. (3). The contract simply contemplated the work of filling a depression in order that the main work of construction might proceed in accordance with the major contract. Respondent was not "selling" sand, gravel, or earth, but was merely performing the work necessary to make a fill. I agree that the judgment should be affirmed.

JEFFERS and GRADY, JJ., concur with STEINERT, J.

ROBINSON, J. (dissenting)—One who dissents from an overwhelming majority feels obligated at least to outline his reasons for doing so, lest otherwise his dissent may be thought purely capricious. In consideration for those who

must pay for our opinions, as well as the law libraries which must house them, an attempt will be made to achieve reasonable brevity.

In the first place, I am strongly inclined to think that the oral contract, which was actually made by Olsen with the Bay Construction, Inc., was one for the purchase and sale of goods, within the meaning of the statute of frauds. As I view it, Olsen had a contract to bring a certain area up to grade. Not having the material required, he was compelled to purchase it. He orally agreed to buy it from the Bay Construction, Inc., "at 70¢ per cubic yard." Dirt was the subject matter of this contract, and, according to the general rule, dirt is goods, wares, and merchandise, within the meaning of the statute of frauds.

"It is clear that 'goods, wares and merchandise' include all movable or tangible articles, such as are capable of actual delivery and acceptance." 37 C. J. S. 629, Statute of Frauds, § 142.

I am firmly convinced that the second point made by appellants is well taken. The appellants cited many authorities to the effect that a mere delivery will not satisfy the statute, but that there must be also an actual acceptance of the goods by the vendee, pursuant to the alleged contract, and that this acceptance must be evidenced by some unequivocal act. The bulk of their argument, both in their briefs and orally at the hearing before us, was devoted to the contention that there was no substantial evidence of such an acceptance. As to this contention, the main opinion very tersely says:

"Under the authorities, the evidence was clearly sufficient to warrant the jury in finding that appellants accepted delivery of a part of the 'goods' pursuant to the terms of the contract, . . ."

Immediately preceding this, it is said:

"The issue, under the evidence, is resolved to this: When was the oral contract repudiated by appellants? According to their theory, it was repudiated on September 18th, *before* any material had been delivered and accepted. According to the evidence most favorable to respondent, it was not

repudiated before nine o'clock on September 21st, *after* a substantial amount of material had been delivered pursuant to the order given by Olsen on the afternoon of September 20th."

I cannot agree with either of these statements. I am of the opinion that there is no substantial evidence that Olsen accepted a portion of the goods pursuant to the oral contract, and very definitely of the opinion that no unequivocal act is shown from which an intent to accept a partial performance of that contract can be inferred. This court said in *Adams County Mercantile Co. v. Walla Walla Livestock Co.,* 64 Wash. 285, 116 Pac. 669:

"It is well settled by the authorities that to satisfy the statute there must be not only a delivery of the goods by the vendor, but also an actual acceptance by the vendee with an intention of taking possession as owner, and that this intent must be evidenced by unequivocal acts."

(A great number of cases to the same effect are cited in appellants' briefs.)

This, I think, must ordinarily mean by some act or acts done after delivery. Surely, it cannot mean by oral statement made in advance of delivery. Suppose A orally agrees to deliver to B, and B agrees to accept and pay one dollar per bushel for one thousand bushels of wheat. After entering into this oral contract, B tells A that he is not going to perform his part of it, but later, upon A's pleading with him to perform, he says: "All right; you may begin delivery in the morning." A brings a load of wheat, and B refuses to take it, or, in B's absence, unloads it at his warehouse. Has that contract been taken out of the statute? Clearly not, as I understand the authorities; for there has been no unequivocal act of acceptance. The fact that A told B to begin delivery in the morning is not an act. The contract remains still wholly and completely oral. An oral contract cannot be taken out of the statute by a mere oral repetition of the promise to accept the goods. There must be an *act* of acceptance, not merely an oral agreement to accept.

In this case, from the very first, Olsen at no time denied that he had made the oral contract. He merely contended

that it never became enforcible. The oral contract was made on Tuesday, September 14th. The Wassons became impatient because Olsen did not give the go-ahead signal. They testified that they became convinced that he was "stalling." Glenn Wasson testified that he accordingly drew up a written agreement, in duplicate, and took the copies to Olsen for signature on Saturday, September 18th. Olsen refused to sign, indicating that he was going to let the contract to someone else. As a matter of fact, as Olsen informed the Wassons, the principal contractor on the project was putting pressure on him to let the contract to Thorburn & Logozo. Olsen says he told Wasson at that Saturday interview that he had already let the contract to Thorburn & Logozo. Wasson denies this. However that may be, it is certain that Olsen did enter into the written contract with Thorburn & Logozo that very day. The instrument is in the record. It is also certain that the Wassons understood that Olsen was not going to permit them to perform; for, as they themselves testified, they at once sought the aid of their attorneys to compel performance. If, as I understand, "repudiated" means refusal to perform (and I so understand it, since Olsen at no time denied that he had made the oral contract), the evidence on both sides of the case is to the effect that Olsen repudiated the contract on September 18th.

The Wassons argued with Olsen on this matter, pointing out that they would sustain losses if not permitted to perform, they having rented equipment and made other expenditures on the faith of the oral agreement. Olsen, presumably feeling morally bound at least, offered to arrange with Logozo to allow them to perform a portion of the contract. Olsen testified that Logozo was willing to do so, and that he so informed the Wassons. They did not admit he so informed them, but it is certain that they agreed to meet Olsen and Logozo on the ground on the afternoon of September 20th for some purpose. Olson kept the appointment, and the Wassons and one of their attorneys came. Logozo did not. They waited for him for a considerable time; the Wassons and their attorney meanwhile pressing Olsen to let them begin delivering dirt. He told them, as is pointed

out in the main opinion, that they could begin in the morning. The main opinion accepts this as a direction to begin performance of the original oral contract; but to me it seems apparent that Olsen meant that they could begin the performance of the contract which he had made with Logozo and in the performance of which Logozo had agreed they might participate. Note that, right in the middle of the testimony quoted in the main opinion, and relied upon as decisive, Olsen says:

"I wanted to tell them that they were supposed to see Logozo about the place of the dump, and also the dump man."

Olsen, having been told by Logozo that he would permit the Bay Construction, Inc., to furnish a portion of the dirt, evidently thought it was safe to let the Wassons deliver dirt in the morning, even though Logozo had not appeared to make the definite agreement as to the amount they should be permitted to deliver. Logozo did not prove so agreeable, and, when Olsen found that out, he immediately ordered delivery stopped. I am, therefore, of the opinion that there is no substantial evidence that Olsen told the respondents to begin performance of the original oral contract. As a matter of law, I think it would not take the oral contract out of the statute of frauds if he did. Only an unequivocal act of acceptance of a partial delivery could do that, and there is no evidence of any such act in the record, unequivocal or otherwise.

For the foregoing reasons, I am of the opinion that the recovery allowed on the first cause of action should be stricken from the judgment.

SIMPSON and MALLERY, JJ., concur with ROBINSON, J.