440 So.2d 422 (1983)
MOTOR HOMES OF AMERICA, INC., a Florida Corporation, Appellant,
v.
Clarence H. O'DONNELL and Georgia G. O'Donnell, and Winnebago Industries, Inc., a Foreign Corporation, Appellees.
Nos. 82-46, 82-394.
District Court of Appeal of Florida, Fourth District.
October 19, 1983.
Rehearing Denied November 23, 1983.
*423 Kenneth M. Jones of Moody & Jones, Fort Lauderdale, for appellant.
Robert W. Crawford, Fort Lauderdale, for appellees  O'Donnells.
R. Fred Lewis of Magill, Reid, Kuvin & Lewis, Miami, for appellee  Winnebago Industries, Inc.
DOWNEY, Judge.
These consolidated appeals by Motor Homes of America, Inc., seek reversal of (1) a final judgment in favor of Winnebago Industries, Inc., on a cross-claim in which Motor Homes sought indemnity from Winnebago *424 Industries, Inc. (Case No. 82-46), and (2) an amended final judgment in favor of Mr. and Mrs. O'Donnell on their claim for rescission of a contract, damages, and attorney's fees (Case No. 82-394).
In 1980 the O'Donnells owned a recreational vehicle with a 36 gallon gasoline tank that gave a driving range of about 200 miles. They wanted a recreational vehicle with a longer cruising range and went to Motor Homes, from which they had bought the first vehicle, to find a suitable vehicle. A Motor Homes salesman showed them a 22 foot Brave Winnebago. A brochure supplied by Winnebago described the vehicle as having a 60 gallon tank. The O'Donnells asked Motor Homes to verify with Winnebago by telephone that the vehicle had a 60 gallon tank, since such a tank was an indispensible prerequisite for a purchase by the O'Donnells. The Motor Homes salesman did not call the Winnebago factory; instead, he informed the O'Donnells that all Motor Homes could go by was the brochure. Motor Homes could have determined that the vehicle had a 45 gallon tank by deciphering the vehicle identification number code, but none of the Motor Homes employees did any deciphering of that code, although they were on notice that the code would reveal gasoline tank capacity. The O'Donnells entered into a sales contract with Motor Homes which contained a conspicuously displayed disclaimer of any warranties, express or implied. Pursuant thereto the O'Donnells purchased the vehicle for $22,935 believing it had a 60 gallon gas tank. However, the vehicle in fact had only a 45 gallon tank. Moreover, the vehicle had other minor problems: water leaks, power steering problems, oil problems, fiberboard problems, as well as curtain and plumbing problems. Being dissatisfied with the unit the O'Donnells returned it to Motor Homes a few days after the purchase and thereafter brought suit against Motor Homes and Winnebago.
Counts I and II of the complaint sought rescission of the sale plus damages from Motor Homes. Counts III and IV sought damages from Motor Homes for breach of express and implied warranties. Counts V and VI sought damages from Winnebago for breach of express and implied warranties. Count VII sought attorney's fees pursuant to the Magnuson-Moss Warranty Act (15 U.S.C.A. §§ 2301-2312 (West 1976)) from both Motor Homes and Winnebago. After a bench trial, the court awarded the O'Donnells $25,600 against Motor Homes on Count I only, holding that the plaintiffs should take nothing under the remaining six counts. The final judgment found against Motor Homes and Winnebago on their respective cross-claims. Thereafter, the O'Donnells moved to amend the final judgment to include a finding that they had prevailed on Count VII as to Motor Homes and were entitled to attorney's fees. The court granted that motion and entered an amended final judgment finding that the O'Donnells prevailed upon Count VII as to Motor Homes and were entitled to recover attorney's fees. These appeals followed.
Motor Homes' complaints on appeal are directed solely to the trial court's failure to grant Motor Homes relief on its cross claim against Winnebago and the award of attorney's fees to the O'Donnells against Motor Homes based upon the Magnuson-Moss Warranty Act.
With reference to the indemnity claim against Winnebago we hold that, because Motor Homes was clearly guilty of some fault in the sale of the vehicle, a finding for Winnebago on the cross-claim was proper. As the Supreme Court said in Houdaille Industries, Inc. v. Edwards, 374 So.2d 490, 493 (Fla. 1979):
Indemnity is a right which inures to one who discharges a duty owed by him, but which, as between himself and another, should have been discharged by the other and is allowable only where the whole fault is in the one against whom indemnity is sought.
We therefore affirm the denial of Motor Homes' cross-claim.
The purpose of the Magnuson-Moss Act is described in one of the leading cases decided under said act, Skelton v. General Motors Corp., 660 F.2d 311, 313-14 (7th Cir. *425 1981), cert. denied, 456 U.S. 974, 102 S.Ct. 2238, 72 L.Ed.2d 848 (1982), as:
Magnuson-Moss is, in the main, a remedial statute designed to protect consumers from deceptive warranty practices. Its draftsmen believed that consumer product warranties often were too complex to be understood, too varied to allow meaningful comparisons and too restricted to provide meaningful warranty protection. See S.Rep. No. 93-151, 93d Cong., 2nd Sess. 6-8 (1973); H.R.Rep. No. 93-1107, 93d Cong., 2d Sess. 22-29, reprinted in [1974] U.S.Code Cong. & Ad. News 7702, 7705-11. The Act's draftsmen sought to remedy these perceived ills by imposing extensive disclosure requirements and minimum content standards on particular types of written consumer product warranties. And, to promote enforcement of these warranties, the draftsmen devised a detailed remedial apparatus, which includes optional informal dispute settlement procedures as well as private and governmental judicial actions.
Although Magnuson-Moss does not require any manufacturer or seller to extend a warranty with its product, any "written warranty" offered with a consumer product is subject to the Acts's regulatory requirements. [Footnotes omitted.]
The court further opined that Congress did not intend "to create a federal cause of action for breach of all written express warranties" by enacting Magnuson-Moss. Skelton, supra, at 316. The court also declined to endorse the district court's conclusion that where a written warranty is issued, other written promises made in connection with the same transaction should be enforceable as part of the written warranty. Skelton, supra, at 320.
In Count VII of the complaint, the plaintiffs specifically sought attorney's fees and other relief under § 2304(a)(4). The trial court, without further elaboration, awarded fees on this basis. However, § 2304(a) imposes statutory obligations only upon certain suppliers; namely, "warrantor[s] warranting a consumer product by means of a written warranty" who seek to meet minimum federal standards. 15 U.S.C.A. § 2304. It is axiomatic that Motor Homes cannot be held liable for breaching a statutory duty it did not owe. The issue then is whether Motor Homes warranted the capacity of the fuel tank and other characteristics of the unit sold by means of a written warranty.
The Act defines a written warranty as follows:
(6) The term written warranty means 
(A) any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time, or
(B) any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product.
15 U.S.C.A. § 2301(6) (1976).
As a preliminary matter, we note that the sales contract between Motor Homes and plaintiff Clarence O'Donnell contained a conspicuous disclaimer of any express warranties other than those made by the manufacturer. However, even assuming, without so deciding, that any express warranties made by Motor Homes were not effectively disclaimed, the record does not support a finding that Motor Homes issued a written warranty as to fuel tank capacity or any other aspect of the unit. Plaintiffs do not point to any writing directed to them from Motor Homes which embodied any representation *426 or obligation within the scope of § 2301(6).[1]
Plaintiffs do, however, advance the argument that Motor Homes adopted an express warranty by the manufacturer and may be liable thereunder. Title 16 C.F.R. § 700.4 states:
§ 700.4 Parties "actually making" a written warranty.
Section 110(f) of the Act provides that only the supplier "actually making" a written warranty is liable for purposes of FTC and private enforcement of the Act. A supplier who does no more than distribute or sell a consumer product covered by a written warranty offered by another person or business and which identifies that person or business as the warrantor is not liable for failure of the written warranty to comply with the Act or rules thereunder. However, other actions and written and oral representations of such a supplier in connection with the offer or sale of a warranted product may obligate that supplier under the Act. If under state law the supplier is deemed to have "adopted" the written affirmation of fact, promise, or undertaking, the supplier is also obligated under the Act. Suppliers are advised to consult state law to determine those actions and representations which may make them co-warrantors, and therefore obligated under the warranty of the other person or business.
The operative provision of the regulation is
If under state law the supplier is deemed to have "adopted" the written affirmation of fact, promise, or undertaking, the supplier is also obligated under the Act.
We hold that, while the underlined language may describe an express warranty, adoption may only render a supplier liable where the affirmation, promise, or undertaking adopted is a written warranty under the Act.
Prior to the above quoted provision, the regulation states:
A supplier who does no more than distribute or sell a consumer product covered by a written warranty offered by another person or business ... is not liable for failure of the written warranty to comply with the Act... .
In addition, the title thereof is "[p]arties `actually making' a written warranty," and the above view comports with the requirement under 15 U.S.C.A. § 2310 that
(f) For purposes of this section, only the warrantor actually making a written affirmation of fact, promise, or undertaking shall be deemed to have created a written warranty, and any rights arising thereunder may be enforced under this section only against such warrantor and no other person.
Because plaintiffs have not shown, and our review of the record has not revealed, any written warranty made by Winnebago concerning fuel tank capacity,[2] Motor Homes cannot be deemed a warrantor by adoption, and thus cannot be held liable under the Act for attorney's fees.
In its final judgment, the trial court focused on the nonconforming fuel tank capacity as a basis for finding that plaintiffs properly revoked their acceptance of the unit. However, the final judgment also mentioned that the unit had numerous other defects, which to varying degrees would impair the value of the unit to the O'Donnells. However, we find that even if these defects were covered by a written warranty issued by Winnebago, Motor Homes did not adopt such a warranty as a matter of state law. While Motor Homes may have referred to sales and specification literature of the manufacturer in making *427 certain representations about the unit sold, it did not take what otherwise constituted a written warranty by Winnebago as its own. See Cochran v. McDonald, 23 Wash.2d 308, 161 P.2d 305, 306 (1945). Delivering, presenting or explaining a manufacturer's warranty, without more, does not render a dealer a co-warrantor by adoption. Kure v. Chevrolet Motor Division, 581 P.2d 603 (Wyo. 1978); Wallace v. McCampbell, 178 Tenn. 224, 156 S.W.2d 442 (1942); Courtesy Ford Sales, Inc. v. Farrior, 53 Ala.App. 94, 298 So.2d 26 (1974); Hodge Boats & Motors v. King, 578 S.W.2d 890 (Tex.Civ.App. 1979); Import Motors, Inc. v. Matthews, 557 S.W.2d 807 (Tex.Civ.App. 1977).
In summary, we believe that Motor Homes did not issue or adopt any written warranty which would subject it to the provision of the Act allegedly violated. Furthermore, there was no basis for an implied warranty claim since the sales contract between Motor Homes and the O'Donnells contained an adequate disclaimer. § 672.316, Fla. Stat. (1981). Therefore, the O'Donnells did not establish their rights under the Magnuson-Moss Act and thus were not entitled to attorney's fees as provided therein.
Accordingly, we affirm the judgment regarding the cross-claims and reverse the judgment allowing attorney's fees to O'Donnells against Motor Homes of America.
Affirmed in part; Reversed in part.
BERANEK and WALDEN, JJ., concur.
NOTES
[1] See Skelton, supra, at 314, 316 & 320.
[2] The record indicates that, as to fuel tank capacity, Winnebago made no "written affirmation of fact or written promise... which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time"; nor did Winnebago issue "any undertaking in writing ... to repair, refund, replace or take other remedial action ... in the event [of failure] to meet the specifications set forth in the undertaking." 15 U.S.C.A. § 2301(6)(A), (B).