# FAUST v SUNRISE NISSAN OF ORANGE PARK, INC., et al.

Case No. 88-1154-CA

Fourth Judicial Circuit, Clay County

March 27, 1990

**William H. Folsom, Jr., Esquire,** for plaintiff.

**George D. Gabel, Jr., Esquire,** Gabel Taylor & Dees, for defendant, Sunrise Nissan of Orange Park, Inc.

## OPINION OF THE COURT

GILES P. LEWIS, Circuit Judge.

### PARTIAL SUMMARY JUDGMENT FOR DEFENDANTS

This is an action arising out of the sale of a motor vehicle to plaintiff, Donald G. Faust (hereinafter "Faust"), against Sunrise Nissan of Orange Park, Inc. (hereinafter "Sunrise"), the dealers, and American Casualty Company of Reading, PA., the bonding company, for breach of express warranty, Deceptive and Unfair Trade Practices Act violations, Federal warranty violations, fraud and concealment and revocation of acceptance. The defendants have filed a Motion for Summary Judgment, taking the position that there is no genuine issue of material fact and that defendants are entitled to judgment as a matter of law.

### FACTS

The relevant facts are undisputed.

1. Plaintiff Faust purchased from Sunrise on February 6, 1988, a 1985 Winnebago Centauri Van.

2. Sunrise advertised "new never before titled" 1985 Winnebago Centauri vehicles in the *Jax Air News.*

3. The purchased vehicle had 13,966 miles on it.

4. The vehicle purchased by Faust had never before been titled and under § 319.001(4), Florida Statutes, was correctly labeled "new" on the Security Agreement and the application for title.

5. Faust was aware that the purchased vehicle had been used by Sunrise as a utility vehicle and as a demonstrator.

6. Upon purchase of the vehicle, Faust signed a Security Agreement, a Used Vehicle - Limited Warranty and a Buyer's Guide.

7. The Buyer's Guide, in conspicuous language, stated that the contract of sale was an "AS IS - NO WARRANTY" sale.

8. The Used Vehicle - Limited Warranty disclaimed all implied warranties except for a 30-day period following sale, disclaimed all consequential damages, stated that Sunrise would correct four items on the vehicle and provided Faust with an Owner's Manual.

9. Mr. Fey, a Sunrise salesman, handled all of the negotiations with Faust that led to the agreement to purchase the vehicle.

10. Sunrise corrected three of the items listed on the Used Vehicle - Limited Warranty and attempted to repair the fourth item, the air conditioning "slide." Sunrise provided Faust with an Owner's Manual.

112

11. The transaxle on the vehicle sold had been replaced by Sunrise in February, 1987, when the vehicle had 4,880 miles on it. The transmission on the vehicle sold had been repaired by Sunrise in September 1987.

12. The purchased vehicle's transaxle burned out on March 31, 1988, and the vehicle was towed to Motor Homes of America.

## Applicable Law

Taking each of the plaintiff's allegations in order, the Court finds as follows:

### A. *Breach of Express Warranty*

Neither the newspaper advertisement nor the Security Agreement expressly warranted that the 1985 Winnebago was a "new" vehicle in any way other than having never before been titled. Section 319.001(4), requires that a never-before-titled vehicle be labeled "new". Faust testified that he knew the purchased vehicle had over 12,000 miles on it, that the vehicle had been used as a demonstrator and utility vehicle, and that the vehicle had been on Sunrise's lot "for a year or so."

Faust alleges that oral representations were made by Sunrise which impliedly warranted that proper repair and maintenance had been performed on the vehicle. Under Florida law, such statement does not create an implied warranty. Section 672.313(2), Florida Statutes clearly states:

> It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, *but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.* [emphasis added]

The purported representations are nothing more than the seller's opinion of the service that Sunrise offered all its customers and did not create an express warranty as to the vehicle purchased by Faust.

If these oral representations arguably "implied" that Sunrise "had done good and workmanlike repair and proper and timely maintenance," as alleged in the amended complaint, any such implied warranty was effectively disclaimed by the Used Vehicle - Limited Warranty, which states in boldface type:

> Any implied warranty of fitness or merchantability created herein, in fact or in law, shall be limited to the duration of the expressed

limited warranty stated herein, but in no event less than 30 days from the effective date hereof.

Faust's deposition testimony indicates that at the time of the sale, he clearly understood that warranties originally came with the vehicle. He knew the vehicle had over 12,000 miles on it, and he knew the vehicle was not under a factory warranty. In addition, he admitted that he chose not to purchase a warranty from another company. He specifically testified that Sunrise offered him no other warranties other than the 30-day warranty provided by the Used Vehicle - Limited Warranty. He testified:

Q: What did you understand those zeros to mean in there?

A: That there were no days warranty and zero miles covered.

Q: What did you interpret this to mean?

A: Basically that there wasn't any warranty.

When asked subsequently about his understanding of the purpose of the Used Vehicle - Limited Warranty, Faust replied:

A: Well, it says used vehicle limited warranty, and I was told that there was no other warranty other than what was on this page.

. . .

Q: Correct me if I'm wrong. You thought that this created a thirty day warranty from Sunrise Nissan on this particular unit?

A: Yes, that the vehicle would be properly serviced for thirty days.

When asked what the language in the Used Vehicle - Limited Warranty meant to him, he stated:

Q: What limited warranty covered your vehicle on the day you bought it?

A. The only warranty I know was what was on the back side here, 30 days.

Faust purchased the vehicle on February 6, 1988, with 13,966 miles on it. He drove the vehicle to Tennessee and back subsequent to the purchase. The 30-day warranty on the vehicle expired on March 7, 1988, and the purchased vehicle broke down on March 31, 1988, after Faust had put almost 3,000 additional miles on the vehicle. According to the uncontradicted evidence, therefore, no warranty — express or implied — existed on the purchased vehicle after March 7, 1988.

There being no warranty on March 31, 1988, Sunrise could not have breached an express warranty.

114

## B. Deceptive and Unfair Trade

### Practices Act Violations

Faust relies on rules promulgated by the Department of Legal Affairs which "prohibit with specificity acts or practices that violate" the Florida Deceptive and Unfair Trade Practices Act. § 501.205, Florida Statutes.

1. Repairs Prior to Purchase

Rule 2-19.004(7) of the Florida Administrative Code provides:

"It shall be an unfair or deceptive act or practice for a motor vehicle repair shop to make any departure from or disregard accepted trade standards for good and workmanlike repair in any material respect."

Faust alleges several instances of departure from accepted trade standards for good and workmanlike repair. With regard to the alleged instances of departure from accepted trade standards such allegations do not create a claim pursuant to Rule 2-19.004(7) of the Florida Administrative Code because they were not part of the "consumer transaction." See *City of Cars, Inc. v Simms,* 526 So.2d 119 (Fla. 5th DCA 1988). Faust alleges the following: (1) installation of transaxle cause cover 180 degrees off from factory specifications; (2) added excessive silicone sealant; (3) left off bolts and nuts or left bolts and nuts in a loose condition; (4) failure to stake ("ping") the nut on prior shaft; and (5) failure to add final drive oil and/or 90 weight gear oil. To apply Rule 2-19.004, of the Florida Administrative Code to the present case, however, such alleged improper repairs must have been performed in connection with a consumer transaction. It is an undisputed fact that all of such repairs were performed not for Faust but by Sunrise for Sunrise while using the vehicle as a demonstrator or utility vehicle. Such repairs, therefore, are not part of a "consumer transaction" as defined by § 501.203, Florida Statutes.

2. Repairs After Purchase

Rules 2-19.004(2) and (6), Florida Administrative Code, provide as follows:

"It shall be an unfair or deceptive act or practice for a motor vehicle repair shop to represent that repairs have been made when such is not a fact . . . [or to] make or authorize in any manner or by any means whatever any statement written or oral which is deceptive or misleading, and which is known, or which by the exercise of reasonable care should be known to be deceptive or misleading."

Faust testified that repairs had been made to the purchased vehicle's air conditioner, temperature gauge, and muffler. He testified that the

**115**

first time he left the vehicle with Sunrise to have the air conditioner and muffler repaired, the muffler was replaced and the air conditioner was not fixed. He stated that the air conditioner was not fixed because Sunrise did not have time. At no time did Sunrise represent to him that repairs to the air conditioner were made.

Arguably, Sunrise continued to have problems fixing the air conditioner. It would work for five minutes and then shut off; however, Sunrise never represented to Faust that the conditioner was repaired.

After taking the vehicle to Tennessee, Faust returned to Sunrise to have them work on the air conditioner and the temperature gauge. According to Faust's testimony, Sunrise never represented they had fixed the temperature gauge. In fact, Sunrise represented to Faust that he might have to have Motor Homes of America work on the problem.

Although the air conditioner never worked to Faust's satisfaction, Sunrise did attempt to repair it. Attempts to repair with unsatisfactory results are far different from misrepresentations being made that repairs were attempted while indeed they were not. Sunrise admitted to Faust that they were having trouble fixing the air conditioner.

Faust also alleges that Sunrise had a reasonable opportunity to make these repairs. In actuality, however, Sunrise attempted repairs on the air conditioner on only two occasions, February 16 and February 24. This is not considered reasonable opportunity under Florida law. By analogy, see § 681.104(1), Florida Statutes.

Faust testified that on or about March 10, he took the vehicle back to have the gear shifter repaired, but he did not request that Sunrise fix either the air conditioner or the temperature gauge. There is no evidence that Sunrise refused to continue making attempts to complete the needed repairs.

Faust also had testified, however, as follows:

Prior to the time of sale I specifically asked about the history of the subject vehicle and was told that Sunrise Nissan . . . had been a Winnebago Industries, Inc., authorized dealer, but was not going to be a Winnebago dealer in the future, and had properly serviced and maintained the subject unit which I was buying and that the same was an untitled, new vehicle which had been used by Sunrise Nissan . . . deliver parts and transport customers. . . . I told them that I had to have it properly serviced before I took it to Tennessee, whatever it needed, oil change, tuneup, whatever they normally perform on all of the vehicles they sold. They said they would take care of all of that, that they performed complete maintenance on all vehicles before they completed the sale on it.

The Court is concerned that if such representations were made, there may be a question of fact for the jury to consider as to whether Sunrise should have revealed the previous repairs to Faust at the time of purchase or whether proper servicing would have revealed the potential problem with the transaxle. For that reason, the Motion for Summary Judgment with regard to the claim under Chapter 501, Florida Statutes, will be denied.

### C. Federal Warranty Violations

Section 2304(a) of the Magnuson-Moss Act, 15 U.S.C. Section 2301 et seq. (the "Act"), imposes statutory obligations only upon "warrantors warranting a consumer product by means of a written warranty." The Act defines a "written warranty" as:

(a) Any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time, or

(b) Any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking which written affirmation, promise or undertaking becomes part of the basis of the bargain between a supplier, and a buyer for purposes of than resale of such product. 15 U.S.C.A. § 2301(6).

In *Motor Homes of America v O'Donnell,* 440 So.2d 422 (Fla. 4th DCA 1983), the Fourth District Court of Appeal stated that the Act:

. . . imposes statutory obligations only upon certain suppliers; namely, warrantor[s] warranting a consumer product by means of a "written warranty" who seek to meet minimum federal standards. (citing 15 U.S.C.A. § 2304).

Faust alleges three sources of an express warranty: the advertisement in *Jax Air News,* the Used Vehicle - Limited Warranty, and oral representations. Clearly the alleged *oral* representations are not a *written* warranty covered by Magnuson-Moss. In addition, neither the advertisement nor the Used Vehicle - Limited Warranty meet the definitional requirements of 15 U.S.C. § 2301(6)(a) or (b).

The advertisement does not affirm or promise that the workmanship of the vehicle is defect-free or that it will meet a specified level of

**117**

performance over a specified period of time. 15 U.S.C. § 2301(6)(a). Neither does the advertisement indicate that Sunrise will refund, replace, or repair the vehicle in the event it fails to meet specifications. 15 U.S.C. § 2301(6)(b). Therefore, on its face, the advertisement is not a "written warranty" and the Act provides no cause of action as it relates to the advertisement.

Similarly, the Used Vehicle - Limited Warranty is not within the Magnuson-Moss definition of "written warranty." The Used Vehicle - Limited Warranty negates any promise to repair for any length of time and does not allege the vehicle is defect free. It negates any undertaking to take any remedial action in the event the purchased vehicle fails to meet any stated specifications, and no affirmation or undertaking to that effect ever became a basis of the bargain between Faust and Sunrise.

Assuming for the sake of argument that the Used Vehicle - Limited Warranty created an implied warranty, the implied warranty lasted for only 30 days. Faust's vehicle broke down after the expiration of such warranty. The Act, therefore, is not applicable.

### D. *Fraud and Concealment*

Faust alleges that the Sunrise salesman failed to disclose prior repairs on the purchased vehicle while it was being utilized by Sunrise as a demonstrator or a utility vehicle. There is no evidence, however, that the salesman knew of any potential problems with the vehicle. Furthermore, he was not the managing agent or primary owner of the corporation. See *Mercury Motors Express, Inc. v Smith,* 393 So.2d 545 (Fla. 1981). The necessary elements for a claim based upon fraud, therefore, are not present in this case.

### E. *Revocation of Acceptance*

There being no breach of an express warranty, Faust is not entitled to revocation of acceptance under § 672.608(a), Florida Statutes, which states in part:

"The buyer may revoke his acceptance of a lot or commercial unit whose *non-conformity* substantially impairs its value to him . . ." [emphasis supplied]

Non-conformity exists when the goods are not in accordance with the obligations under the contract. § 672.106(2), Florida Statutes. The contract between Faust and Sunrise was for the purchase of a new, never-before-titled vehicle that had been utilized by Sunrise for 13,966 miles as a demonstrator and dealer utility vehicle. Faust knew that

118

such was the case when he purchased the vehicle. In addition, he purchased the vehicle for less than one-half of the retail price. He chose to purchase that particular vehicle rather than another Centauri on the lot, which had only 3,200 miles on it and a factory warranty. He testified that the subject vehicle was filthy and needed to be cleaned. Faust purchased the vehicle "as is" with no warranty except for the 30-day limited warranty contained in the Used Vehicle - Limited Warranty.

Under the terms of their agreement, Sunrise corrected everything they promised to correct with the exception of the air conditioner. Sunrise attempted to correct the air conditioning problem on two occasions, February 16 and February 24. There is no testimony that Sunrise refused to correct the air conditioning problem. On about March 19 (after the expiration of the 30-day warranty), Faust took the vehicle back to Sunrise to request that the gear shifter be repaired. He testified:

Q: What did you tell him that you wanted done at that point?

A: To get the gear shifter working. That was the major problem right then. I had given up on their maintenance of the air conditioner and the temperature gauge and figured I would just have to take it over to Motor Homes of America.

After only two attempts to correct the problem, Faust gave Sunrise no further opportunity to work on the air conditioner. By the terms of their agreement Sunrise was not responsible for any problems with the vehicle after the expiration of the 30-day warranty period. The breakdown of the vehicle on March 31, 1988, was not a non-conformity which entitles Faust to revocation of acceptance under the obligations due him under his contract with Sunrise.

There being no issue of material fact as to Counts I, III, IV and V of the Amended Complaint, it is therefore,

ORDERED AND ADJUDGED:

1. The Defendants' Motion for Summary Judgment is granted as to Count I (Breach of Express Warranty), Count III (Federal Warranty Violations), Count IV (Fraud and Concealment) and Count V (Revocation of Acceptance).

2. The Motion for Summary Judgment is denied as to Count II (Deceptive and Unfair Trade Practices Act Violations).

DONE AND ORDERED this 27th day of March, 1990, at Green Cove Springs, Clay County, Florida.